# IN THE UNITED STATES DISTRICT COURT FOR
# THE SOUTHERN DISTRICT OF WEST VIRGINIA

# HUNTINGTON DIVISION

KELLY STEPHENS,

          Plaintiff,

v.                                            CIVIL ACTION NO. 3:24-0698

MANAGEMENT FC, LLC
d/b/a FLAGSHIP COMMUNITIES,

          Defendant.

## MEMORANDUM OPINION AND ORDER

This case arises from Defendant's decision to terminate Plaintiff's employment. Plaintiff's Complaint alleges that Defendant terminated Plaintiff in retaliation for Plaintiff filing a claim for workers' compensation. *See* ECF 1, Compl. ¶ 21.

Before the Court is Defendant's Motion for Summary Judgment (ECF 32). For the reasons stated below, the Court **DENIES** the Motion.

## BACKGROUND

Defendant employed Plaintiff as the property manager of Blue Spruce, one of Defendant's mobile-home communities. *See* ECF 32-1 ("Chambers Dep.") at 19–20.

Plaintiff's supervisor, Kayla Chambers, testified that, on July 11, 2024, she called District Manager Ben Winkler because she was unsatisfied with Plaintiff's job performance.[1] *See id.* at 15, 30. Mr. Winkler told Ms. Chambers to create a written disciplinary warning to give to Plaintiff. *See id.* Ms. Chambers said she gave the written warning to Plaintiff that same day. *See id.* Plaintiff,

---

[1] According to the transcript of Ms. Chambers's deposition, Ms. Chambers said she spoke to "Ben Luther." It seems likely, however, that Ms. Chambers meant to say "Ben Winkler." In his own deposition, Mr. Winkler described himself as Ms. Chambers's supervisor and said he spoke with Ms. Chambers on July 11. *See* ECF 32-3 at 15, 17, 22–23.

however, testified that she did not receive the warning until July 23. *See* ECF 32-4 ("Stephens Dep.") at 98–99. Also, while Ms. Chambers testified that she signed the warning on July 11, *see* Chambers Dep. at 36, the warning document produced in discovery does not bear her signature, *see* ECF 32-5 ("Written Warning") at 2.

Plaintiff injured her ankle at work on July 15. *See id.* at 84. On July 23, Plaintiff was unable to put pressure on her injured ankle and told Ms. Chambers that she was going to the doctor. *See id.* at 93, 95. The doctor gave Plaintiff a note stating that Plaintiff was "off work" until July 29. *See* ECF 32-7.

Ms. Chambers testified that she helped Plaintiff file a workers' compensation claim and gave Plaintiff "all of the information she needed . . . ." Chambers Dep. 78–79. Plaintiff said she gave this information to the intake nurse at the doctor's office. *See* Stephens Dep. 109–10. When counsel asked Plaintiff if she "ever receive[d] any benefits, any payments, or anything under Workers' Compensation," Plaintiff said she had not. *Id.* at 110.

After Ms. Chambers informed Mr. Winkler that Plaintiff was going to the doctor, Mr. Winkler asked Ms. Chambers to get Plaintiff to sign the disciplinary warning. *See id.* at 83–84. Mr. Winkler was unable to explain why he did so immediately after he learned that Plaintiff was seeking workers' compensation. *See* ECF 32-3 at 71–72.

Ms. Chambers then told Plaintiff that she was going to send Plaintiff "a write up that [she] needed [Plaintiff] to sign . . . ." ECF 34-2 at 1. Plaintiff responded by asking "what is this for?" *Id.* Ms. Chambers explained that it was related to certain deficiencies in Plaintiff's job performance. *See id.* Plaintiff agreed to sign the warning. *See id.* at 2.

The written warning identified five issues with Plaintiff's work performance. *See* Written Warning 1. The first is "Consistently failed to follow directions given by your supervisors even

2

after giving proper instructions." *Id.* According to Ms. Chambers, this referred to "inputting payments, invoices and documents into the system." Chambers Dep. 45. Ms. Chambers testified that, while Plaintiff was on vacation, another employee of Defendant discovered tenants' payments sitting on Plaintiff's desk that had not been "inputted." *Id.* at 46–48. Ms. Chambers said she did not know whether the payments were made while Plaintiff was on vacation. *See id.* at 50. Ms. Chambers also testified that she had to correct payments that Plaintiff entered incorrectly. *See id.*

The second issue is "Has not kept your supervisors informed of important issues occurring in your community in a timely manner." Written Warning 1. Ms. Chambers said she did not know what this was referencing. *See* Chambers Dep. 54.

The third issue is "Despite being advised to maintain and clean the office space, the area remained in disarray during the initial visit and follow up from management." Written Warning 1. Ms. Chambers testified that she visited Blue Spruce on June 27 and observed dead maggots and flies on the floor of Plaintiff's office. *See* Chambers Dep. 94–95. Plaintiff denied seeing maggots in the office. *See* Stephens Dep. 180–81. She testified that it was maintenance's responsibility to clean and organize the office and sweep the floors. *See id.* at 102–03, 131–32. Ms. Chambers acknowledged that Defendant did not employ a maintenance person during most of Plaintiff's tenure. *See* Chambers Dep. 23, 109.

Ms. Chambers also observed "boxes in front of the front door" and maintenance supplies where they were not supposed to be. *Id.* at 98–99. Plaintiff testified that it was maintenance who placed the boxes and equipment. *See id.* at 129–30. She also explained that there was nowhere else to put the equipment. *See id.* at 130.

The fourth issue is "Has been observed on camera multiple times throughout the day smoking and using your personal phone during office hours." Written Warning 1. Ms. Chambers

3

originally testified that she did not have access to the cameras at Blue Spruce until July 29. *See* Chambers Dep. 61. When asked how she disciplined Plaintiff for what she saw on the cameras if she did not have access to their footage, Ms. Chambers changed her testimony and said she gained access at the beginning of July. *See id.* at 63–64. Plaintiff testified that no one ever told her that she could not take smoke breaks. *See* Stephens Dep. 104.

The fifth issue is "Has exceeded allotted weekly hours without authorization having already received a verbal warning." Ms. Chambers testified that, on June 27, she told Plaintiff not to work overtime without approval. *See* Chambers Dep. 55. Ms. Chambers said she did not know whether Plaintiff worked overtime without approval thereafter. *See id.*

According to the written warning, Plaintiff had been "verbally warned" about the problems with her performance on June 27. Written Warning 1. Plaintiff said she did not recall receiving a verbal warning on June 27 or on any other date. *See* Stephens Dep. 99–100. Ms. Chambers explained that she did not tell Plaintiff that the conversation was a warning—that "[i]t was just me saying, hey, we need to get this cleaned." Chambers Dep. 109.

Ms. Chambers visited Blue Spruce while Plaintiff was on medical leave. Chambers Dep. at 87. She said she found "checks on the desk that were not inputted" and files that had not been filed. *Id.* at 88, 104. She took pictures of the desk and the inside of its drawers. *See id.* at 101; *see also* ECF No. 32-10. She also testified that "[t]he park [was] not being managed"—that there were "[l]ots of violations that were needed to be put out that were not put out." Chambers Dep. 88.

According to Plaintiff, some of the files on the desk were "in the process of being worked on." Stephens Dep. 121. She said the desk clutter was also attributable to a lack of storage space. *See id.* at 119–20. In addition, Plaintiff asserted that the pictures Ms. Chambers took did not reflect the state of Plaintiff's desk when Plaintiff started her medical leave. *See id.* at 117.

4

On July 29—the day Plaintiff returned to work—Ms. Chambers informed Plaintiff that she was being terminated. Stephens Dep. 112. Defendant asserts that Plaintiff was terminated for the reasons described in the written warning, and because "Plaintiff was rude[,] . . . did not greet clients appropriately, did not generate or provide receipts to clients, and slept during work hours." ECF 32-8 at 5.

Ms. Chambers explained that the rudeness and failure to appropriately greet clients refers to instances in which residents would come to deliver rent checks, and Plaintiff would have them put the checks in a collection box instead of taking the checks from the residents directly. *See* Chambers Dep. 118.

Despite Defendant's assertion that sleeping on the job was a basis for Plaintiff's termination, Ms. Chambers testified that she "didn't think it was relevant at the time of the write-up." *Id.* at 120. She could not explain why the sleeping was a basis for Plaintiff's termination but not "relevant" when she created the written warning. *See id.*

Hank Larkins, Defendant's Human Resources Director, testified that Defendant has a "progressive discipline" system. ECF 32-2 at 10–11. He explained that, before an employee is terminated, they are given a verbal warning, a written warning, and, sometimes, a final written warning. *See id.* at 11, 17–18.

**LEGAL STANDARD**

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is 'genuine' if the evidence presented would allow a reasonable factfinder to find for the nonmovant. A fact is 'material' if it may influence the outcome of the suit under governing law." *Bhattacharya v. Murray*, 93 F.4th 675, 686 (4th Cir. 2024) (internal citations

omitted). In deciding whether to grant summary judgment, "a court must view all facts, and reasonable inferences taken therefrom, in the light most favorable to the nonmoving party . . . ." *Id.*

## ANALYSIS

Plaintiff claims that her termination violated W. Va. Code § 23-5A-1. *See* Compl. ¶ 22. Section 23-5A-1 provides that "[n]o employer shall discriminate in any manner against any of his present or former employees because of such present or former employee's receipt of or attempt to receive" workers' compensation benefits. To make a prima facie case under this section, an employee must demonstrate that "(1) an on-the-job injury was sustained; (2) proceedings were instituted under the Workers' Compensation Act; and (3) the filing of a workers' compensation claim was a significant factor in the employer's decision to discharge or otherwise discriminate against the employee." Syl. Pt. 1, *Powell v. Wyoming Cablevision, Inc.*, 403 S.E.2d 717 (W. Va. 1991) (internal citation omitted).

Defendant argues that there is no genuine dispute that (1) workers' compensation proceedings were not instituted and (2) the filing of Plaintiff's workers' compensation claim was not a significant factor in Defendant's decision to terminate her employment. The Court addresses each argument in turn.

### A. Whether Workers' Compensation Proceedings Were Instituted Is Genuinely Disputed

Defendant argues that summary judgment should be granted because no documentary evidence shows that Plaintiff filed a workers' compensation claim. *See* ECF 33 at 7. Despite this lack of documentation, however, a reasonable juror could conclude that Plaintiff instituted workers' compensation proceedings. Ms. Chambers testified that she helped Plaintiff file a

workers' compensation claim, and Plaintiff said she was able to use the information Ms. Chambers provided to get care for her injury. Also, while Plaintiff testified that she never received workers' compensation benefits, she may have meant that she never received any sort of payment from Defendant's insurance carrier. Her testimony does not preclude the possibility that worker's compensation paid for her medical care directly. Accordingly, the Court will not grant summary judgment on this basis.

### B. Whether Plaintiff's Workers' Compensation Claim Was a Significant Factor in Plaintiff's Termination Is Genuinely Disputed

Defendant also argues that summary judgment should be granted because Plaintiff has failed to demonstrate that "her filing of a workers' compensation claim was a significant factor in Defendant's decision to terminate her employment." ECF 33 at 5. The Court is unpersuaded. A reasonable juror could conclude that Plaintiff's termination was retaliatory because of (1) the temporal proximity between Plaintiff's medical leave and the termination, (2) Defendant's failure to adhere to its own procedures in disciplining Plaintiff, and (3) evidence that calls into question Defendant's purported bases for terminating Plaintiff.

    i.    *Temporal Proximity*

Plaintiff told Ms. Chambers that she was going to seek workers' compensation benefits on July 23. After Ms. Chambers had told him of Plaintiff's intention to seek benefits, Mr. Winkler directed Ms. Chambers to get Plaintiff to sign the written warning. While Ms. Chambers testified that she had previously given Plaintiff the written warning, Plaintiff denied this. Plaintiff was terminated just a few days later—the day she returned from medical leave.

The temporal proximity between Plaintiff's medical leave and Plaintiff's termination could allow a reasonable juror to infer that Plaintiff's termination was retaliatory and that Defendant's

7

employees back-dated the written warning to disguise their retaliatory motive.

    *ii.*    *Disciplinary Procedures*

According to Mr. Larkins, Defendant has a progressive disciplinary process. Before being terminated, an employee receives two or three warnings: one verbal and one or two written. Here, there is evidence that Defendant did not follow this procedure in disciplining Plaintiff. Plaintiff denies ever receiving a verbal warning, and Ms. Chambers suggested that the "verbal warning" she gave Plaintiff on June 27 was merely an admonition to clean up the office. Defendant, then, may have only given Plaintiff a single warning before terminating her. A reasonable juror could infer a retaliatory motive from Defendant's deviation from normal procedure.

    *iii.*    *Evidence on Defendant's Termination Justifications*

Finally, while there is certainly evidence that Plaintiff failed to satisfy Defendant's expectations in certain respects, there is also evidence that calls into question some of Defendant's purported justifications for terminating Plaintiff's employment.

For example, Ms. Chambers testified that she could not recall how Plaintiff had failed to keep her "supervisors informed of important issues occurring in [the] community." Written Warning.

Also, while Defendant claims it terminated Plaintiff in part because of her failure to maintain a clean office space, Plaintiff testified that it was maintenance's responsibility to keep the space clean. She also suggested that much of the clutter was attributable to a lack of alternative storage space.

In addition, some of the purported grounds for Plaintiff's termination were based on footage from a camera outside Plaintiff's office. At one point, however, Ms. Chambers testified

that she did not have access to this footage until Plaintiff was terminated.[2]

Even if most of the reasons given for the written warning and termination hold up under scrutiny, a reasonable juror could include that the inclusion of more dubious justifications in the written warning and Defendant's responses to Plaintiff's interrogatories suggest that Plaintiff's termination was pretextual.

Taken together, the temporal proximity between Plaintiff's medical leave and the termination, Defendant's alleged failure to adhere to its own procedures in disciplining Plaintiff, and evidence that calls into question Defendant's purported bases for terminating Plaintiff create a genuine dispute about whether Defendant terminated Plaintiff's employment, in significant part, because she filed a workers' compensation claim. Accordingly, the Court will deny Defendant's Motion.

## CONCLUSION

The Court **DENIES** Defendant's Motion for Summary Judgment (ECF 32).

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:    October 27, 2025

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE

---

[2] Plaintiff argues that the Court should not consider any evidence derived from the camera in ruling on Defendant's Motion because such footage is inadmissible. *See* ECF 34 pt. I.C. The Court declines to address Plaintiff's argument at this stage because it would not affect the Court's ruling.